316-307, re Estate of Melvin Watson, deceased, Richard Watson, admitted by Drew Thomas Parsons versus Melvin Watson, Jr., appellant by Jennifer Sackett Hogan. Ms. Collins. My name is Jennifer Sackett Collins and I represent the appellant Melvin Watson, Jr. He is also referenced as Sonny in the case. Melvin Watson, Jr. is one of nine children of the decedent and a legatee of the estate. Melvin Watson, the decedent, died and left his estate to eight of his nine children. David was the one child who was left out of the estate. Of those eight children included in that group, we have the executor, Richard Watson. We have the appellant, my client, Melvin Watson, Jr. And finally, one of those other children that is important to the discussion today is Robert Watson. He predeceased his father, Melvin Watson, the decedent, but he left behind heirs. The executor's brief in this case references that, quoting from page five of the brief, the law clearly states that an executor is a fiduciary held to the highest standards of good faith and diligence. As the executor represents the decedent and all other interested parties to the estate, it then goes on, included in the all other parties list, to specify legatees. Indeed, the executor takes an oath of office and the executor is bound and bears fiduciary obligations, fiduciary duties to the legatees. I'm going to talk about five ways in which the executor in this case disregarded the law, disregarded those obligations and his oath. Does this go to the affirmative defense that is provided by the trial court? Well, this goes to the, it does go to the affirmative defense in part, and in part it also goes to the arguments that are presented at law. So it's included, everything I'm about to say is included in the briefs. I'm not speaking outside the briefs or the record. On January, I'm sorry, Robert Watson, excuse me, the executor repetitively misrepresents the status of his brother, Robert Watson. I'm going to give you some examples of that. On January 4th, 2012, the executor signs a petition for probate, misrepresenting that his brother, Robert Watson, survived his father. That's C003 of the record. Robert, in fact, died on July 16th, 2011. On the same day, the executor signs a proof of heirship, identifying Robert Watson as having no heirs. Robert, in fact, has heirs and there's evidence in the record that shows that he knew at least about two of them since 1976, so more than 30 years prior to signing the documents relevant to probate. And those two heirs are Mindy Williamson and Joseph Swinford. There's an affidavit of the executor's sister, Carol C., in the record, and she includes her observations about family events and also attaches a photo of the family in 1976, which includes Robert's two children, Mindy and Joseph, as well as their uncle, Richard, who's the executor. She also includes a letter from Joseph Swinford to her, which she states in her affidavit, she read to Richard. And in that letter, it states Uncle Richard, this heir of Robert's referencing the executor's uncle, Richard. And that's on the record 108. In addition to misrepresentation, the executor in this case self-insures, but then the third executor makes distributions. On April 24, 2012 and November 21, 2012, to seven of the eight legatees, intentionally excluding Robert's heirs. Yet, more than two years later, on January 8, 2015, the executor seeks reimbursement from eight of his siblings. And in this motion for recoupment, or petition for recoupment that we'll discuss, he also includes his brother, David, to whom no distributions were ever made because he was not a legatee. Fourth and fifth, fourth, the executor made his first distribution prior to the expiration of the six-month claim period in the Probate Act. Well, is this an action for breach of fiduciary duty against the executor, or is this an action by the executor on behalf of the estate for recoupment? This was an action by the executor for recoupment that was granted by the court without allowing us to raise breach of fiduciary duty, without requiring that it be presented under the Probate Act, without any verified pleadings, without any service of process on the people against whom this judgment was entered. Well, first of all, except for the one who wasn't part of the estate, those folks, the other folks, this is in the Probate Act in itself, and the other legatees are parties, correct? The other legatees are in the Probate Act to receive funds. They're not in that action to have funds taken from them, and the citation pursuant... Have they entered an appearance? No. Have they appeared before that in any capacity? I do detail that in my opening brief, Your Honor, and there was one of them, I believe, and I can go, if you want me to go back to it, who had an attorney's appearance before we felt our appearance on behalf of Melvin. Where are you going with this is my question. The motion for recoupment was improperly granted by the court. It should be vacated. Well, that's the issue that's up in front. That's the issue before the court. Right. So, Your Honor, I don't know if I understand the question. Well, I asked originally, when you were talking about breach of fiduciary duty, you were denied the opportunity to present an affirmative defense. Correct. Okay. Correct, Your Honor. And does it matter under the law? Yes, Your Honor. And why? Because in this case, number one, they should have proceeded under citation to discover the citation proceeding under the Probate Act. No law out there that says equitable power of the court can rule on this petition for recoupment? The case law talks about, specifically, Your Honor, that where the act is, you don't usurp it by using equitable arguments. And in this case, that was what happened. What was sought by the executor was return of funds to the estate. And the proper procedure for that is through a citation proceeding under the Probate Act. It isn't. Because what we're talking about, we were specifically denied an opportunity to raise an equitable defense, even though it's an equitable argument that was made in the motion for recoupment. The recoupment is to the estate, not to the executor, right? Correct. And so, if you've got a beef with the executor, how does that affect the right of the estate to be made whole? Because the executor acted in breach of his obligations. And therefore, they took them out of his pocket versus the legatees to whom distributions were made. Well, then maybe the legatees have a separate action against the executor. But what's that got to do with whether the estate has a right to be made whole? And with respect to citations, those are, if you think, somebody's hiding assets out there. They're trying to discover stuff. There's nobody trying to discover anything. He said, look, you were given this much money, too much, give it back. So that's not a procedure for a citation. They know what the assets are. It's, what, $18,000 roughly. We know you always got $18,000 because I gave it to you, and then some.  That's not a procedure for a citation. They know what the assets are. I respectfully disagree, Your Honor, that the probate act provides for funds to be returned to the estate, and it has a process laid out for that. Okay, let's go to that. It does have a process for that. But is it the exclusive revenue? Well, when a revenue is provided for in the law, why are we usurping that law to provide a different cause of action? Is it prohibited? It's not specifically prohibited, but you're allowing someone to go around the requirements of the act. What would be the difference in argument, and what would be the difference in result? Either way. Certainly, Your Honor. I believe the difference in argument would be that all of the people whom money was sought from, and that includes the one non-legalty, David Watson, would be served with process in this, and they would have a right to appear, and they would have a right to respond and defend themselves against the judgment that was entered against them, and that wasn't done. Was there a judgment against David? There was, yes. That order included David. And then if you take David out, it changes the math. Okay, so the math is larger or smaller? The math would then be larger against everyone else if you take David out. So there was a correction in math, was there not? No, there was not. It was discussed at the argument of motion of reconsideration. The judge never entered anything, and the executor never presented what he believed to be corrective calculations to the court. There was a lot of discussion about that back and forth, and ultimately the court ruled based on his July order when he reconsidered it, knowing that that math was incorrect, and specifically wanting this court to hear the issue of breach of fiduciary duty. We believe that bad actors shouldn't be rewarded for bad actions. And as a bad actor, you're distributing funds, and then two years later, without condition, to people who know they're only involved in this action to receive from the estate. And then two years later, you're saying, but hold on, I need that back. And you're saying that without a verified petition, you're saying that after making misrepresentations to the court, and you're saying that after breaching the Probate Act. You breached the Probate Act because one of those distributions, the first one, was made six months prior to the end of the six-month claims period ending. Help me out. Sure. How has your client heard? My client's heard because two years later, when my client doesn't have those funds necessary, the court's ordering that my client provide those funds. There was no condition made. What was the original distribution? I don't have those numbers in front of me, Your Honor. I want to say it was just under $50,000 for the first one, and then there was a second one that was more substantial. But I don't have those numbers. Okay. Over $100,000. I believe so, Your Honor. Okay. So your client got the use of this $18,000 for two years, interest-free. There was no condition placed on that, Your Honor. Well, I mean, in reality, that's what happened, right? He got more money than he had coming, and nobody's saying pay it back with interest. And by the way, with respect to the fellow who was not a legatee under this will and who was never a part of this probate action, do you agree as to him, at least clearly, that judgment would be void for lack of personal jurisdiction? Correct, and I think the judgment's void for lack of subject matter jurisdiction. Courts have held that you have to have a verified petition before the court for seeking funds for the estate or from the estate. And that includes, I think it's Lindheimer that I cited in my brief, in which someone filed a claim against an estate that wasn't verified. And the court dismissed that claim and said you have to have it verified. So do you dispute whether or not he left out the heirs of one of the legatees? Robert's heirs were not included in distributions. And they should have been. They should have been, and there's no evidence. And you agree with that? And I agree with that, but there's no evidence that any of the legatees knew at the time of the distribution that their executor, the only one with the oath and the only one with the fiduciary obligation here, that their executor intentionally didn't include their brother's kids. No one knows that. So if they're getting money, thinking the executor's doing their job, it's not their job. Are these siblings too? The legatees, are they all siblings? The legatees are all siblings, Your Honor. And they didn't know their brother was dead? No, that's not what I said, Your Honor. Well, answer my question. They didn't know their brother was dead? They knew their brother was dead. And they knew they had nephew or nieces or whatever it was? And they knew they had at least two. However, there's no evidence that when that distribution or the two distributions were made, they knew that he was being excluded. Help me out here. Under the Probate Act, don't all heirs of law receive the paper from the executive? And there's nothing in the record showing that they were served with it? That would be another obligation of the executive, Your Honor. What's the remedy of removal of the executive under the Probate Act? Yes, Your Honor, this probate is still pending. This was brought up by the court, and one of the questions the court specifically asked under 304 was to resolve the issue with respect to the fiduciary. Because, again, if the rationale is you got too much, so you have to get back what you got that wasn't yours, that's a mistake of fact. A mistake of law, an executor making a mistake of law, the law in Illinois isn't the same. You don't have to return that. So you get a windfall? You don't get a windfall. The executor, two years passed, things have been done with that money, and now some of those sisters and some of those legatees are going to be placed into a position where they're facing hardship. Well, if the agency is faithful and distributive? The only funds that are left would go to the air, the robbers' heirs, and not to anyone else, to make up for what a portion of that was supposed to be part of the calculation of how that $18,000 was arrived upon, which is... And if they're damaged, if they've got some cognizable damage, then they can sue the executor for breach of fiduciary duty and show how they were damaged. A probate action, you get resolved at one time. I mean, that's judicial, that's official, we're all there, we're all talking about these things. There's cases in which, and I cite to the court, in which you can raise it, and it has been raised. In fact, when these things have happened, like the Whitaker case, you have a situation in which the executor was on the hook. They're the ones who took on this obligation. No one else took on this obligation. He didn't follow through on the obligation. He's responsible for not following through. Bad actors have to be responsible for their bad actions. And that's what happened here. Um... I'm sorry, I didn't hear. Legacies get no more than they would have gotten under the original distribution, had the original distribution included. If they had included all the legacies, if the executor had included all the legacies, then the distributions would have been less. And then this final distribution would include a distribution to everyone as well. Thank you. Justices, counsel, may it please the court. The equitable proceeding that took place on June 19, 2015, that being the petition for recoupment, should be upheld by this court because it is a remedy imposed that closely follows the original testamentary intent of will that is not under skewed. And it is also supported by precedent from this very court, which stands over a century old. During the argument against recoupment, counsel for Melvin Watson, Jr. admitted that the executor improperly distributed the funds, and we've heard that echoed today by counsel. An admission that there was improper distribution by the executor is an acknowledgment of overpayment to Mr. Melvin Watson, Jr., and basically an acknowledgment that the heirs of the one child that pre-deceased the testator were left out. So whether you choose to call this a recoupment or an impairment or a liability, what it really is is a matter of equity, a matter of fairness, where form is what is disregarded in favor of substance. And the substantive remedy in this situation is that exactly what... You said the reverse. Substance is disregarded. Sorry. Yes. So the court exercised a long-standing equitable jurisdiction to address a basic problem. We forgot about these errors, errors that everybody knew about because everybody's related, and you don't get to keep what's not yours. I have a question that seems to have been kind of swirling around here. Somebody forgot about the errors? There was a holding by the court on June 19th that the executor committed an error by overdistribution, and then in the same instance the court said that the heirs, including Mr. Melvin Watson, could pursue a legal action against the executor for that error. But that is not an issue today. An issue today is the challenge by the appellants of whether or not the court even had the power to order that the overdistributed funds be returned. And clearly under Wolf v. Beard, under Inland Matter of Whittaker, and under Inrabia State of Pervecho, this is a Third District case, courts of probate have equitable powers in jurisdiction, and the jurisdiction in this case was never raised as a defense. Mr. Melvin Watson, Jr. paid counsel to come to court to dispute vehemently this action, and at no time did he enter a special objection to jurisdiction at all. Let me ask this. Can we agree that with respect to the fellow who was not a legatee and was never a part of this probate action, that that judgment against him is void? I would agree that if that action were brought before the lower court, then yes, Your Honor, he would be void in that situation. He never appeared. I don't believe so. He was never a party. I don't believe so. He wasn't a legatee. I don't believe so. He didn't get a distribution. But the actual issue at law here today is whether the court, the probate court, hearing the action, had jurisdiction over the parties to enter the remedy that simply paid back what was overpaid to you. You can pursue an action against him later, the executor, but as of today, you don't get to keep what's not yours. It's essentially what the court did. And that is totally legal, totally supported by precedent. And although the probate courts are bound by the parameters of the only probate act, as counsel suggests, they still possess an inherent jurisdiction of an equitable character and may adopt forms of equitable proceedings, which is what they did in this instance. And they did consider that facts submitted by the record. There wasn't a lot of argument about evidence because it had all been submitted in brief form to the court. So there were letters. There were pictures. There were data. The court made a ruling of fact as well as law. And so, therefore, the standard of review for this court is manifestly. And I don't think that counsel in the brief— What was the ruling of fact as you see it? As I see it, the ruling of fact was a ruling that the executor erred by overdistributing portions of the estate. That is a ruling of fact. And it's one that's not been contested here. What about the math? The opposing counsel said that there's no ruling as to the math, as to what the overpayment was and what, under the judgment, those who received an overpayment were to reimburse the estate. As to the math, Judge, without the docket right in front of me, I can only respond by saying that if the math was unclear from the record, the substance of the ruling is still sustainable because of the fact that no one can dispute that the errors were overlooked. So if it's returned on that point, then it need only be with an instruction to make a specific factual finding as to the amounts that it should be overpaid. Not that the order to overpay itself is illegal, because it's not. Well, you just said errors that were overlooked. What does that mean? The errors overlooked were the errors of Robert D. Watson, who pre-deceased his father. Was it an error to pre-decease? Sorry? Was it an error to pre-decease? What was the error? The error was one of the children who pre-deceased the testator. And his children are therefore... Well, the error was the error by the executor. Yes. Not listing, because there should have been prosterities. Yes. And not listing the children of Robert. Yes. And not listing Robert as having deceased, or did they? There was, in the proving up of the petition for recoupment, there was the... If the court is asking the original error, then yes, the original error is correct. The updated of heirship was incorrect. Yes. Yes. So, the idea is that the error committed is one that the court can address through its equitable jurisdiction. And that jurisdiction was never contested. In the right way, at least. So, therefore, this court should sustain the original action of the lower court to enter an equitable relief for a very simple problem. If there are no other questions... And the object of the equitable relief is which party? The object of the equitable party in this situation is the executor asking for the return of monies that he overpaid so that he can distribute them to the actual heirs who are legally entitled to that money. I respectfully disagree. The object is the estate. Yes. I mean to say the estate. And the executor asking for the estate. Thank you. Thank you. I'd like to first turn to a provision, some citations that support the concept that a petition for recoupment or some type of action in equity should not be allowed as a mechanism to preserve the Probate Act citation procedure, which requires service of process as well as verification of a petition in order to confer subject matter jurisdiction on the court. You have no verified petition here. The court never had subject matter jurisdiction. The Probate Act itself supports that in section 16.1 by providing a citation procedure in section 5-1. The case in Wright Estate of Lindheimer also supports that as well as treatise or secondary materials such as the IICLE litigation disputed to states, which I also cite to within my brief, that likewise supports that concept. With respect to personal jurisdiction being waived, I do respond to that in the reply brief. We did raise personal jurisdiction in our motion for reconsideration and the executor failed to object to it at that time. Even if the court finds that personal jurisdiction was waived by Melvin Watson, Jr., the court's discretion is to find that no personal jurisdiction exists as to the other six persons against whom the July 20, 2015 order is entered. Furthermore, Your Honor... Well, personal jurisdiction is not discretionary at any level, is it? Either the court has it or it doesn't. The court didn't have it, Your Honor. And neither did it have subject matter jurisdiction, and you can't waive subject matter jurisdiction. So, Your Honor, in terms of equitable relief, which is what my opposing counsel was arguing, why does it make sense to provide for an equitable cause of action and not let me raise an equitable defense? Why do we have to bifurcate that? Why do we have to create a separate proceeding? Why do we have to have this money, then go into a state, be redistributed, and then fight to get it back when it may be already gone? Isn't that just wasting judicial resources, wasting state funds? The executor posted a self-bond, I think, in three times the value of the state. Your Honor, I don't believe it was three times the value of the state. The executor posted a... A self-bond. Stated he was self-insured. I don't know, I would not... I do not believe it's three times the value of the state, Your Honor. Well, let's talk about what you just said a minute ago. They recover it, then they should try to recoup it when it's already gone. This money that is being recouped or trying to be recouped here is going to go to the heirs of the pre-deceased legatee, correct? Correct. So it's not going to the executor. So that money is there to do what's right there. So you can be assured that that money that gets recouped does not... Because your action won't be against the estate if you sue the executor. It will be against him personally. My point is, if you're going to handle it in equity, Your Honor, why not handle all the issues at once? And breach of fiduciary duty is clearly something we can raise in equity. And it's something that bad actors shouldn't be rewarded for their bad actions. Of all the people here we're talking about, there's only one that carried a duty. Only one who took an oath. There's only one who had a fiduciary application, and that's the executor. And the cases that we cite do support the fact that when the executor acts bad, the executor doesn't get to then have everyone else pay for its behavior. Okay. Is this a supervised administration? This is unsupervised, Your Honor. However, the first distribution was made, Your Honor... Before the claims period expired. Before the claims period. So it did require court order. And no court order was obtained by the executor for that distribution. It also would require a bond. And no bond was obtained specifically for that distribution, Your Honor. So... One second. Thank you. So even if for purposes of argument we assume the executor's actions were mistakes, and not knowing actions meant to cut out a brother's heirs, the trial court here confuses impact and mistake of law versus impact and mistake of fact. And the trial court's rationale is you don't get to keep what's not yours, even if it's not been put into your hands through no fault of your own. However, that fails to take into account the executor is not on equal footing with the legatees here who receive the distribution. He has oath, he has fiduciary obligations, he has counsel. He can't represent in the status of the heir, then make an unconditional distribution to legatees, then change his mind, and then seek the money back two years after the fact. That's not equitable either. The executor skirts the law, doesn't follow the rules, and asks the trial court to hold the legatees and one non-legatee accountable for his wrong. Respectfully, I request that the court would vacate both the court's July 20, 2015, and May 6, 2016 orders, and provide instructions concerning us being allowed to raise a breach of fiduciary duty as a defense. Thank you, Your Honors. Thank you both for your argument today. We will take this matter under consideration. We'll get back to you with the written decision in a short recess. Thank you.